UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00133-TBR-LLK

WILLIAM WEBB,                                                              Plaintiff,

v.

CROUNSE CORPORATION,                                                      Defendant.

### MEMORANDUM OPINION AND ORDER

William Webb filed this Jones Act and general maritime law action against Crounse Corporation after sustaining injuries aboard its vessel, the *M/V Yvonne Conway*. With the prospect of trial approaching, Webb asks the Court to conduct a *Daubert* hearing and to preclude Crounse's medical expert, Dr. Arthur F. Lee, from offering certain testimony. Having reviewed Webb's papers, the Court finds a hearing to be unnecessary and Dr. Lee's testimony to be unobjectionable. Accordingly, Webb's Motion for a *Daubert* Hearing and to Preclude Dr. Lee's Testimony, R. 27, is **DENIED**.

### I.

### A.

William Webb worked as a deckhand for Crounse Corporation aboard its river towing vessel, the *M/V Yvonne Conway*. *See* R. 1 at 2, ¶¶ 4–5 (Complaint). On July 14, 2011, during the course of performing his regular duties, Webb lifted a lock line from the deck of the *M/V Yvonne Conway* "in order to tie off an empty tow to a loaded tow." *Id.*, ¶ 9. According to Webb, he injured his thoracic spine in the process. *Id.*

### B.

On July 1, 2014, William Webb filed this action against Crounse Corporation, asserting claims under the Jones Act, and for unseaworthiness and negligence under

general maritime law.  *See id.* at 6–11, ¶¶ 16–27.  Now, Webb asks the Court to conduct a *Daubert* hearing and exclude a handful of opinions offered by Crounse Corporation's medical expert, Dr. Arthur F. Lee.  *See* R. 27 at 1 (Motion for Hearing and to Preclude Testimony of Dr. Lee).

## II.

When a party challenges an opponent's expert witness, this Court must assume "a gatekeeping role" to ensure the reliability and relevance of the expert's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to nonscientific expert testimony).  Federal Rule of Evidence 702 guides the Court through this inquiry.  The plain language of Rule 702 says, first, that an expert must be qualified to testify on account of his "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *see also Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015).  The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'"  *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).  A qualified expert may then testify so long as his opinions will aid the factfinder and are reliable, meaning the opinions are based on sufficient data, reliable methods, and the facts of the case.  Fed. R. Evid. 702(a)–(d); *see also Clark v. W & M Kraft, Inc.*, 476 F. App'x 612, 616 (6th Cir. 2012); *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851, 854 (E.D. Ky. 2013).

There are a number of factors typically considered to resolve questions concerning the reliability (and admissibility) of expert testimony, but no list is

exhaustive. *See Daubert*, 509 U.S. at 593–94; *see also Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012); *Powell v. Tosh*, 942 F. Supp. 2d 678, 686–88 (W.D. Ky. 2013). In any case, the Court has considerable leeway over where to draw the line. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) ("[W]here one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997))). The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

Under normal circumstances, the Court may resolve a *Daubert* motion without holding a hearing. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001). Instead, a hearing is required only if the "record is not adequate" to decide the motion. *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). Ultimately, the decision as to the necessity of a hearing is entrusted to this Court's discretion. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 532 (6th Cir. 2008); *Clark*, 476 F. App'x at 616.

### III.

Given the adequacy of the record, the Court finds it unnecessary to hold a *Daubert* hearing. There is no dispute that Dr. Lee is qualified to offer medical testimony in this case. Instead, Webb objects to Dr. Lee's opinion—that Webb is physically capable of returning to work as a vessel cook—as conclusory.[1]  *See* R. 27-1 at 2

---

[1] In addition, Webb objected to Dr. Lee's opinion insomuch as it relied on papers not produced prior to the discovery deadline. *See* R. 27-1 at 2 & n.5 (Memorandum in Support). Subsequent to Webb's motion, however, the Court extended the discovery deadline to January 29, 2016. *See* R. 34 at 1, ¶ 2

(Memorandum in Support); *see also* R. 27-4 at 1–3 (Dr. Lee's Second Supplemental Report).  In principal part, Webb critiques Dr. Lee for reaching his conclusion without considering an earlier functional capacity evaluation, which discussed Webb's inability stand for prolonged periods. *See* R. 27-1 at 2–4, 6; *see also* R. 27-5 at 10–17 (Functional Capacity Evaluation).  Had Dr. Lee considered that evaluation in his second supplemental report, Webb argues, he could not reliably opine that Webb was fit to serve as a vessel cook, since that position requires standing for "long periods of time with minimum rest periods." R. 27-1 at 4 (quoting R. 27-6 at 3, § 3.9.2 (Description of Cook's Duties)).

The Court disagrees.  Dr. Lee reviewed Crounse's description of a vessel cook's duties and concluded, within a reasonable degree of medical probability, that Webb was fit for the task. *See* R. 27-4 at 1.  As Crounse points out, *see* R. 29 at 2–4 (Response), Dr. Lee discussed the functional capacity evaluation in his prior reports, *see* R. 27-2 at 6 (Dr. Lee's Report); R. 27-3 at 10, ¶ 27 (Dr. Lee's First Supplemental Report).  Though Dr. Lee made no particular reference to the functional capacity evaluation in his second supplemental report, he did opine that nothing in his prior review of Webb's medical records caused him to doubt Webb's fitness to work as a vessel cook. *See* R. 27-4 at 1.  It is not unreasonable to say, then, that Dr. Lee considered the functional capacity evaluation when arriving at his conclusion since the evaluation is contained in the referenced records. *See* R. 27-5 at 10–17.  To the extent Dr. Lee's conclusions might be subject to criticism, Webb remains free to make his case on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

_____

(Amended Scheduling Order).  Accordingly, Webb's argument as to the timeliness of Crounse's disclosure is moot.

appropriate means of attacking shaky but admissible evidence." (citing *Rock v. Arkansas*,

483 U.S. 44, 61 (1987))).

**IV.**

**IT IS HEREBY ORDERED** that William Webb's Motion for a *Daubert* Hearing

and to Preclude Dr. Lee's Testimony, R. 27, is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc:      Counsel of Record