UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00133-TBR-LLK

WILLIAM WEBB, Plaintiff,

v.

CROUNSE CORPORATION, Defendant.

## MEMORANDUM OPINION AND ORDER

William Webb filed this Jones Act and general maritime law action against Crounse Corporation after sustaining injuries aboard its vessel, the *M/V Yvonne Conway*. With the prospect of trial approaching, Crounse asks the Court to preclude Webb's maritime liability expert, Captain Mitchell S. Stoller, from testifying on a variety of issues. Having reviewed Crounse's papers, the Court finds much of Captain Stoller's testimony to be objectionable. Accordingly, Crounse's Motion to Preclude Captain Stoller's Testimony, R. 37, is **GRANTED IN PART** and **DENIED IN PART**.

### I.

### A.

William Webb worked as a deckhand for Crounse Corporation aboard its river towing vessel, the *M/V Yvonne Conway*. *See* R. 1 at 2, ¶¶ 4–5 (Complaint). On July 14, 2011, during the course of performing his regular duties, Webb lifted a lock line from the deck of the *M/V Yvonne Conway* "in order to tie off an empty tow to a loaded tow." *Id.*, ¶ 9. According to Webb, he injured his thoracic spine in the process. *Id.*

### B.

On July 1, 2014, William Webb filed this action against Crounse Corporation, asserting a claim for negligence under the Jones Act and claims for unseaworthiness and

1

maintenance and cure under general maritime law. *See id.* at 6–11, ¶¶ 16–27. Now, Crounse asks the Court to exclude a handful of opinions offered by Webb's maritime liability expert, Captain Mitchell S. Stoller. *See* R. 37 at 1 (Motion to Preclude Captain Stoller's Testimony).

## II.

When a party challenges an opponent's expert witness, this Court must assume "a gatekeeping role" to ensure the reliability and relevance of the expert's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to nonscientific expert testimony). Federal Rule of Evidence 702 guides the Court through this inquiry. The plain language of Rule 702 says, first, that an expert must be qualified to testify on account of his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015). The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). A qualified expert may then testify so long as his opinions will aid the factfinder and are reliable, meaning the opinions are based on sufficient data, reliable methods, and the facts of the case. Fed. R. Evid. 702(a)–(d); *see also Clark v. W & M Kraft, Inc.*, 476 F. App'x 612, 616 (6th Cir. 2012); *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851, 854 (E.D. Ky. 2013).

There are a number of factors typically considered to resolve questions concerning the reliability (and admissibility) of expert testimony, but no list is

exhaustive. *See Daubert*, 509 U.S. at 593–94; *see also Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012); *Powell v. Tosh*, 942 F. Supp. 2d 678, 686–88 (W.D. Ky. 2013). In any case, the Court has considerable leeway over where to draw the line. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) ("[W]here one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997))). The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

## III.

Crounse objects to six opinions that Captain Stoller intends to offer at trial. *See* R. 37-1 at 2 (Memorandum in Support). The way Crounse sees things, Captain Stoller's opinions "unreliably attempt to insert inapplicable standards into the facts of this case, are not relevant to the determination of Jones Act negligence or unseaworthiness, invade the province of the jury, are unsupported by the facts of the case, [and] express opinions outside [his] expertise." *Id.* at 2–3. The Court addresses each objection in turn.

### A.

To start, Crounse takes issue with Captain Stoller's opinion that it had an obligation to establish, and to include in its training materials, maximum lifting limitations. *See id.* at 7–11; *see also* R. 37-2 at 10–13 (Captain Stoller's Report). Since "maximum allowable lifting limits have been rejected as a standard of care in the maritime industry," Crounse claims, Captain Stoller's testimony on that point is "irrelevant and inadmissible." R. 50 at 2 (Reply); *see also* R. 37-1 at 7–10. In any event,

3

though, Crounse maintains that Captain Stoller lacks the qualifications necessary to opine about "ergonomic lifting issues." R. 37-1 at 10; *see also* R. 50 at 5–8. While the latter point has some merit, the Court is not so sure about the other.

1.

In the main, the Court sees no reason to preclude Captain Stoller from testifying about the supposed prevalence of maximum lifting standards or practices in the maritime industry. To recover under the Jones Act, for example, a seaman must demonstrate that his employer's negligence (*i.e.*, duty and breach of that duty) played some part in producing the injury for which he seeks damages. *See Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir. 2001). Though not dispositive, common industry practice has long been relevant to resolving that question. *See Tindle v. Hunter Marine Transp., Inc.*, No. 5:14-CV-00110-TBR-LLK, 2016 WL 270481, at *9 (W.D. Ky. Jan. 21, 2016); *Johnson v. Cenac Towing Inc.*, No. CIV.A.06-0914, 2006 WL 5499506, at *3 (E.D. La. Nov. 21, 2006); *cf. Garza v. Norfolk S. Ry. Co.*, 536 F. App'x 517, 520 (6th Cir. 2013). Here, Captain Stoller's testimony regarding other maritime employers' practices illustrates, arguably, a general acceptance of maximum lifting standards in the maritime industry. In that respect, then, the Court finds that Captain Stoller's testimony may assist the jury in its task.

Nothing in *Taylor v. TECO Barge Line, Inc.*, 642 F. Supp. 2d 689 (W.D. Ky. 2009), upon which Crounse relies, casts doubt on that conclusion. In *Taylor*, the Court precluded an expert from testifying about maximum lifting standards promulgated by the National Institute for Occupational Safety and Health (NIOSH). *Id.* at 691–92. The

reason was simple: There was no evidence presented that those standards had garnered any acceptance in the maritime industry, and the expert's cursory application of them was questionable. *Id.* at 692. In this case, however, Captain Stoller relies on other maritime employers' practices and other standards that, at first blush, appear to be accepted in the maritime industry. *See* R. 37-2 at 12–13. Accordingly, the Court sees no reason to preclude Captain Stoller from testifying about the supposed acceptance of maximum lifting standards in the maritime industry.

**2.**

The Court does agree, though, that Captain Stoller lacks the necessary qualifications to opine about what weight is "safe" to lift, or whether the weight Webb lifted caused his injuries. Though Captain Stoller might have experience in implementing safety policies and procedures for maritime companies, he has no background in medicine, biomechanics, or ergonomics. His only specialized training consists of two continuing education courses in ergonomics, which he completed over a decade ago. *See* R. 37-3 at 7 (Captain Stoller's *Curriculum Vitae*). Such limited experience is insufficient to qualify him as an expert in the field of ergonomics. *See Taylor*, 642 F. Supp. 2d at 692; *Stephens v. Fla. Marine Transporters, Inc.*, No. 12-1873, 2013 WL 11257508, at *3 (E.D. La. Sept. 3, 2013); *cf. Bennett v. CSX Transp., Inc.*, No. 1:05-CV-839-JEC, 2006 WL 5249702, at *5–6 (N.D. Ga. Sept. 19, 2006) (finding expert qualified in ergonomics based on extensive experience in that field). Consequently, the Court will preclude Captain Stoller from testifying on such issues.

5

**B.**

Next, Crounse takes issue with Captain Stoller's reference to the weight of the wet lock line as falling somewhere between 125 and 150 pounds. *See* R. 37-1 at 11 (citing R. 37-2 at 9, 11, 13). Captain Stoller performed no investigation, testing, or calculations to reach that figure, Crounse complains, but instead adopted the estimate that Webb expressed in his deposition. *Id.* In the absence of such testing, Crounse submits, Captain Stoller's testimony as to the weight of the line is nothing more than his personal (rather than expert) opinion. *Id.*

Whether regarded as an opinion, or as a fact upon which he relies in support of other opinions, *see* Fed. R. Evid. 703, the Court agrees that Captain Stoller may not testify as to the weight of the wet lock line. Captain Stoller's estimate is not the product of his "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. Instead, and as Crounse points out, *see* R. 37-1 at 11, he has merely adopted the estimate that Webb expressed in his deposition. "Where an expert merely offers his client's opinion as his own, that opinion may be excluded." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (citing *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 677 (S.D.N.Y. 2011); *King-Ind. Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-CV-00341-SEB-DM, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009)).

Even if Captain Stoller's testimony on this point might be thought of as factual background, the prejudicial effect of publishing it to the jury does not seem to be substantially outweighed by its probative value.[1] *See* Fed. R. Evid. 703. His testimony is

---

[1] The Court assumes, *arguendo*, that the evidence is of a type reasonably relied upon by experts in Captain Stoller's field. *See* Fed. R. Evid. 703.

of little probative value since Webb appears to concede that none of Captain Stoller's opinions "rely on the fact that the line was 125 to 150 pounds." R. 46 at 10 (Response to Motion to Preclude Captain Stoller's Testimony). In addition, there would appear to be a substantial risk of prejudice in that the jury might give Captain Stoller's testimony undue weight in light of his expertise in the maritime industry. *See Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996). Accordingly, at this early juncture, the Court will tentatively preclude Captain Stoller from making reference to the weight of the wet lock line. Should the calculus under Federal Rule of Evidence 703 change during the course of trial, though, either party may approach the bench and ask the Court to reevaluate its ruling.

## C.

In addition, Crounse asks the Court to prohibit Captain Stoller from testifying that it "had an obligation to its crew to determine, through a proper risk assessment, the maximum weight tha[t] an individual, and two individuals, should be allowed to lift and carry." R. 37-2 at 14; *see also* R. 37-1 at 11–12. Relying on a handful of decisions, Crounse says that the nonperformance of a job hazard analysis is not relevant, as a matter of law, to the issues of negligence or unseaworthiness. *See* R. 37-1 at 11–12; R. 50 at 9.

On that point, Crounse appears to be right. The failure to conduct a job hazard analysis for a "routine, non-hazardous task [does] not violate [a maritime employer's] duty to exercise ordinary care." *Harrison v. Seariver Maritime*, 61 F. App'x 119, 2003 WL 342266, at *7 (5th Cir. 2003); *see also Glaze v. Higman Barge Lines, Inc.*, 611 F. App'x 227, 228 (5th Cir. 2015) ("The captain's alleged failure to conduct a job safety analysis [does] not establish a violation of the standard of care."); *Lett v. Omega Protein,*

7

*Inc.*, 487 F. App'x 839, 844–45 (5th Cir. 2012) (affirming grant of summary judgment on Jones Act negligence claim because employer did not "breach[] its duty of care by failing to conduct a job hazard analysis"); *Ritchie v. Omega Protein, Inc.*, 83 Va. Cir. 523, 523 (2010) ("The performance of a job hazard analysis does not render the place of work safe or the vessel or equipment fit; the failure to perform the analysis does not render the place of work unsafe or the vessel or equipment unfit."). Webb identifies no authority rebutting that proposition. *See* R. 46 at 11. Accordingly, the Court will preclude Captain Stoller from testifying about the nonperformance of a job hazard analysis since that testimony will not help the jury determine any fact at issue.

### D.

Next, Crounse argues that Captain Stoller cannot opine that

> Crounse Corporation's owner, managers, and *M/V Yvonne Conway's* Captain failed to report the marine casualty to the USCG as per [46 C.F.R. § 4.05-1(6)]. . . . failed to report the injury to OSHA or American Waterway Operators. . . . [and] failed to administer and report drug and alcohol testing per [46 C.F.R. § 4.06-3(a), (b)] and [33 C.F.R. § 146.35(a)(7)] in order to comply with the requirements in the event of a Serious Marine Incident (SMI).

R. 37-2 at 16; *see also* R. 37-1 at 12–13. According to Crounse, his testimony usurps the Court's duty to instruct the jury on the law and is unhelpful to the jury insofar as he just recites the testimony of other fact witnesses.[2] *See* R. 37-1 at 13–14; R. 50 at 10.

The Court finds both arguments persuasive. The principal problem with Captain Stoller's opinion is that it contains little more than legal conclusions. The Federal Rules of Evidence do not permit such testimony, however, because it invades the province of

---

[2] In the alternative, Crounse suggests that Captain Stoller's testimony is objectionable under Federal Rules of Evidence 401 and 403. *See* R. 37-1 at 13 (Memorandum in Support); R. 50 at 10 (Reply). Because the Court precludes Captain Stoller from offering the recited opinion on other grounds, though, the Court need not address those questions.

this Court "to determine the applicable law and instruct the jury as to that law." *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (quoting *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983)). Hence, an expert may not testify that certain behavior amounts to "negligence," *see Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989), or violates the law, *see Wiek v. S. Towing Co.*, No. 2:13-CV-02416-JTF-TM, 2014 WL 7780840, at *6–7 (W.D. Tenn. Nov. 20, 2014) (holding expert's opinion that crew violated Coast Guard regulations to be an inadmissible legal conclusion). Here, that is precisely what Captain Stoller proposes to do, *see* R. 37-2 at 16–17, and the Court will preclude him from testifying to that effect—nothing more, nothing less.

### E.

Moreover, Crounse objects to Captain Stoller's opinion that had it "equipped the vessel with a lighter lock line, Mr. Webb's injury could have been avoided." R. 37-1 at 14 (quoting R. 37-2 at 9). In offering that opinion, Crounse argues, Stoller departs from his area of expertise as a maritime captain. *Id.* Webb responds that, using "simple logic," Stoller could reach the objected-to conclusion: "Stoller does not need a medical degree to deduce that, when a person is injured in an attempt to lift a too-heavy lock line, a lighter line would have been safer." R. 46 at 13.

Be that as it may, the Court agrees with Crounse. While Captain Stoller is free to testify about the availability of lighter lock lines, for example, he is unqualified to speculate about how using a lighter lock line might have prevented Webb's injury. Such an opinion is a medical conclusion which Captain Stoller is unqualified, as a maritime expert, to give. *Cf. Tindle*, 2016 WL 270481, at *8 (excluding maritime expert's opinion that crew "did everything possible" to save crewmember's life); *Champ v. Marquette*

9

*Transp. Co., LLC*, No. 5:12-CV-00084-TBR, 2014 WL 2879152, at *10 (W.D. Ky. June 24, 2014) (finding maritime expert unqualified to offer opinion on whether "earlier medical attention would have most likely saved" crewmember's life). If Stoller's opinion is, instead, a matter of "simple logic" as Webb suggests, *see* R. 46 at 13, then it is not an expert opinion at all, *see Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) ("[E]xpert testimony does not assist where the jury has no need [] for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." (second alteration in original) (quoting *United States v. Corey*, 207 F.3d 84, 97 n.11 (1st Cir. 2000))); *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720 (W.D. Mich. 2012) ("To the extent that Dr. Walden's arguments are based on common sense rather than his own expertise and experience, they will not be helpful to the jury."). Consequently, the Court will preclude Captain Stoller from offering testimony on this issue.

### F.

Last but not least, Crounse takes issue with Captain Stoller's testimony regarding how Webb's limitations not only "deterred him from obtaining a Pilot's license," but also "have been such that other employment has not been feasible." R. 50 at 11 (quoting R. 37-2 at 10). Since Captain Stoller is neither a medical expert nor a vocational rehabilitation specialist, Crounse argues, an opinion of this ilk is outside his area of expertise. *See* R. 37-1 at 14–15. Webb concedes that Captain Stoller will not, at any point, "provide his expert opinion regarding Webb's ability to obtain a job." R. 46 at 13. Webb argues, though, that Captain Stoller should be permitted to mention Webb's job

10

prospects, derived from Webb's deposition transcript, "as part of the factual background upon which he relies." *Id.*

If Captain Stoller considered that testimony as part of reaching an otherwise admissible expert opinion, much could be said for Webb's suggestion. *See* Fed. R. Evid. 703; *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 717 (6th Cir. 1999) (discussing circumstances under which an expert may testify as to the factual basis of his or her opinions). Yet, none of Captain Stoller's opinions involve, even tangentially, Webb's job prospects, and Webb has made no argument to the contrary. *See* R. 46 at 13–14. Consequently, the Court will preclude Captain Stoller from mentioning any facts as to Webb's efforts to obtain subsequent employment.

## IV.

**IT IS HEREBY ORDERED** that Crounse Corporation's Motion to Preclude Captain Stoller's Testimony, R. 37, is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Date:

cc:     Counsel of Record